**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DWAYNE JERAL BOND, | ) | CASE NO. 1:25-CV-00410-JRA |
| | ) | |
| Plaintiffs, | ) | DISTRICT JUDGE |
| | ) | JOHN R. ADAMS |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | CARMEN E. HENDERSON |
| | ) | |
| Defendant, | ) | **REPORT AND RECOMMENDATION** |

## I. Introduction

Plaintiff, Dwayne Bond ("Bond" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On February 15, 2022, Bond filed applications for DIB and supplemental security income ("SSI"), alleging a disability onset date of January 15, 2015, and claiming he was disabled due to diabetes mellitus type II with neuropathy, degenerative disc disease of the cervical, thoracic, and lumbar spines, and squamous cell carcinoma in situ of the right foot. (ECF No. 8, PageID #: 271–284, 302, 365–66). On October 21, 2022, the Social Security Administration ("SSA") approved

Bond's application for SSI.[1] (ECF No. 8, PageID #: 154–59).  However, Bond's application for DIB was denied initially and upon reconsideration, and Bond requested a hearing before an administrative law judge ("ALJ"). (ECF No. 8, PageID #: 144–45, 153).  On October 19, 2023, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 8, PageID #: 100). During the hearing, Bond amended his onset of disability to February 17, 2016, the date on which he attained age 50. (ECF No. 8, PageID #: 98). On February 1, 2024, the ALJ issued a written decision finding Bond was not disabled. (ECF No. 8, PageID #: 73–86). The ALJ's decision became final on January 7, 2025, when the Appeals Council declined further review.  (ECF No. 8, PageID #: 63–68).

On March 3, 2025, Bond filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1.) The parties have completed briefing in this case. (ECF Nos. 10, 12, 13). Bond asserts the following assignment of error: "Whether the ALJ erred when failing to identify substantial evidence supporting the residual functional capacity finding. Whether the ALJ erred when failing to comply with the regulations regarding medical opinion analysis." (ECF No. 10 at 1). The Court addresses these contentions below.

## III. Background

### A.  Relevant Hearing Testimony

At the hearing, Claimant appeared with counsel and testified as to his symptoms. (ECF No. 8, PageID #: 92–118). Vocational expert (VE), Jacqueline Kennedy-Merit, testified as to Claimant's past work and potential to perform light work. (ECF No. 8, PageID #: 109–118). The ALJ noted that the instant case concerned Bond's DIB claim and as of February 15, 2022, the SSA

---

[1] Because the SSI claim dealt with the period starting February 15, 2022, and the DIB claim dealt with the limited time from February 17, 2016, the alleged onset date, through June 30, 2020, the date last insured, the Court agrees with the ALJ's assessment that the DIB decision is separate from and does not impact the SSI decision. (ECF No. 8, PageID #: 80).

found Bond disabled and issued benefits concerning his Title SSI claim. (ECF No. 8, PageID #: 98). Claimant testified that he stopped taking all his medication for both diabetes and high blood pressure. (ECF No. 8, PageID #: 105). Claimant also testified that he struggled with his vision, he experienced "cracking and bleeding on [his] foot" during the 2016 to 2020 period. (ECF No. 8, PageID #: 105–107).

### B. Relevant Medical Evidence

The ALJ also summarized Bond's health records and symptoms:

> In 2021, after the date last insured, the claimant was diagnosed with skin cancer affecting his right foot. However, the claimant alleged that he had painful skin problems in his feet since 2016 and required treatment for symptoms during the insured period. The claimant also testified he experienced chronic and severe pain in his neck and back during this period.
>
> After the date last insured, the claimant was diagnosed with transient ischemic attack (TIA), skin cancer involving the right foot, and vision impairment (Exhibits 4F-6F, 2021; 7F, 2022).
>
> Diabetes and Foot impairments
> Treating physician Rekha Pawar, M.D., recorded the claimant's diagnosis with Type II diabetes in September 2016, though the record indicates earlier onset (Exhibit 1F/1, 124). At a diabetic podiatry exam in April 2015, the claimant reported numbness, tingling, and burning sensations in his feet and a yearlong history of rash between his last two toes (Exhibit 1F/70) Thomas Schmitt, DPM, reported that the claimant's skin was supple and intact in the bilateral feet and ankles, he had normal strength and range of motion in both feet, and his protective sensation was intact in all sites on monofilament testing (Exhibit 1F/72). The 3rd and 4th webspaces on the right foot were macerated and erythematous (softened and red), otherwise, all other spaces were clean and dry and no open lesions were noted (Id.). In February 2019, the claimant saw Laura Britt, NP, for a diabetes follow-up (Exhibit 1F/124). The claimant reported he had stopped taking his diabetes medication (glipizide) for the past six months because he had leg pain while on this medication and it resolved when he stopped this medicine; laboratory studies performed at this time showed elevated blood glucose and A1C levels (Exhibit 1F/124, 119). The claimant also reported he stopped taking tramadol for the past six months due to

"not wanting to go through process of tox screening" (Exhibit 1F/124). The claimant reported taking ibuprofen as needed for chronic neck and shoulder pain, but denied upper extremity weakness or radiculopathy (Id.). A physical exam revealed steady gait, normal heart and lung sounds, and no edema in the extremities (Id.).

After this, the record does not demonstrate another in-person physical exam until September 2020, about three months after the date last insured (Exhibit 1F/97-99). A diabetic foot exam revealed redness and scaling between two toes in the right foot but otherwise, "pulses intact. No swelling. Monofilament sensation intact." (Exhibit 1F/99). Ms. Britt also observed steady gait, no edema in the extremities, and normal findings on lung, cardiac, and abdominal exams (Id.).

As noted throughout, diabetic foot exams performed from March 2015 – September 2020 showed focal redness and scaling between the last two toes of the right foot (Exhibit 1F). In April 2021, biopsies of the affected areas did confirm squamous cell carcinoma in situ of the right foot (Exhibit 5F). However, even if an acceptable medical source opined that the claimant's cancer developed years before it was diagnoses, this alone would not support a finding of disability because no acceptable medical source of record or other treating source reported objective observations of gait limits, weakness, sensation loss, skin lesions, atrophy, or other signs of severe impairment in the claimant's lower extremities. Regarding diabetes, while an acceptable medical source diagnosed the claimant with diabetes, subsequent physical exams were unremarkable for physical limitations (Exhibit 1F). The claimant reported weight loss in 2020, but did not report vision impairment, altered mental status, or other complications of diabetes during the insured period (Id.).

Alleged Spine Impairments
In February 2014, Dr. Pawar saw the claimant for pain in his neck and scapula after the claimant "strained himself while trying to prevent an object from falling" and left elbow pain (Exhibit 1F/188). However, Dr. Pawar reported "no cervical tenderness spasm, left elbow no redness (or) tenderness, no tenderness over (the) left scapula, no tenderness over the clavicle" (Exhibit 1F/189). Dr. Pawar diagnosed the claimant with "chronic osteoarthritis at this time, (Exhibit 1F/118) but the record contains no x-rays of the claimant's no x-rays of the neck, shoulders, or elbow from this period.

In August 2018, the claimant saw Britt for pain in his neck and

4

shoulder (Exhibit 1F/129). Ms. Britt observed "slight tenderness over the L trapezius. There is no spine tenderness. There is pain w/forward flexion and extension. Pain w/lateral bending." (Exhibit 1F/130). Ms. Britt also reported that the claimant's gait was steady (Id.). Ms. Britt's reports indicate tenderness in the affected areas but no limits in strength, sensation, or motor functioning in the upper extremity.

Chiropractor Alan Newman, DC, treated the claimant ten times from March 2017 – June 2020 for pain in the neck and back (Exhibit 2F). Newman reported tenderness and decreased motion in the claimant's cervical spine, which is consistent with treatment notes from Dr. Pawar and Britt (Id.). Mr. Newman also reported "hyperesthesia" (increased sensation) at several cervical dermatomal levels, which the VA records do not indicate (Exhibit 2F, compare with 1F).

Mr. Newman also took x-rays of the claimant's cervical spine in 2017 and 2019 and reported "moderate C4-C5 and moderate to serious C5-C6 discopathy, moderate to serious left C4-C5 facet spondylosis, moderate anterolateral C5 and C6 Vertebral body spondylosis" (Exhibit 2F/7- 8, 12-13). Mr. Newman's lumbar x-ray reports from 2019 describe "grade 1 retrolisthesis of L5 upon S1, moderate posterior L5-S1 discopathy, mild anterolateral L2-L5 vertebral body spondylosis" (Id.).

In fact, physician-interpreted x-ray reports from June 2022 suggest lesser degenerative changes in the claimant's spine than suggested in Mr. Newman's report. Physician Brian Williams, M.D., took x-rays of the claimant's cervical spine at the State agency's request and reported, "Mild to moderate degenerative disc disease and facet arthropathy is present throughout the cervical spine. There is moderate left neural foraminal stenosis at the C3-C4 and C4-C5 levels. No radiographic evidence of severe neural foraminal stenosis." (Exhibit 9F/11-12, emphasis added). Dr. Williams did not report specific findings at C5-C6. (Id.). Dr. Williams also took lumbar x-rays and reported "normal lumbar lordosis without significant listhesis. The vertebral body heights are maintained. Mild degenerative disc disease and facet arthropathy is present at the L5- S1 level" (Exhibit 9F/12, emphasis added).

Finally, the undersigned notes that in June 2022, consultative medical examiner Karolis Bauza, M.D., observed normal range of motion about the claimant's cervical spine and upper extremities, and reported intact strength, sensation, and functioning in the claimant's bilateral upper extremities, which appears inconsistent

with a severe cervical spine disorder (Exhibit 9F/1-8).

(ECF No.  8, PageID #: 80–83).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

3. Through the date last insured, the claimant had the following severe impairments: cervical spine disorder and diabetes (20 CFR 404.1520(c)).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR 404.1567(b) except the claimant could: never climb ladders, ropes, or scaffolds; never be exposed to concentrated levels of fumes, odors, dusts, gases,  poor ventilation or other pulmonary irritants; and never be exposed to hazards such as moving machinery or unprotected heights.

7. The claimant was born on February 17, 1966 and was 54 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

(ECF No.  8, PageID #: 79–80, 84).

## V. Law & Analysis

### A.  Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## B.  Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529

(6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C.  Discussion

Bond raises one issue on appeal: "Whether the ALJ erred when failing to identify substantial evidence supporting the residual functional capacity finding. Whether the ALJ erred when failing to comply with the regulations regarding medical opinion analysis."  (ECF No. 10 at 1). The Court addresses this issue below.

To support this argument, Bond asserts the following: "[t]he analysis of the evidence is internally inconsistent and based upon legal errors" and "[t]he evidence cited by the ALJ does not support her findings, and the evidence improperly rejected supports greater limitations." (ECF No. 10 at 11). Moreover, Claimant also takes the position that the ALJ, "failed to build an accurate and logical bridge between the evidence and the abilities and limitations contained in the RFC finding." (ECF. No. 10 at 11) (quoting *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). Furthermore, Claimant contends that "[t]he ALJ did not evaluate the medical opinions and prior administrative medical findings (PAMFs) pursuant to the regulations and provided only a conclusory analysis of the opinions and PAMFs." (ECF. No. 10 at 11). Claimant concludes that, "Plaintiff should have been found disabled by the State agency, and, given that the ALJ failed to identify evidence of greater abilities than assessed by Dr. Siddiqui, the ALJ's finding that Plaintiff was not disabled was unsupported by substantial evidence." *Id.*

However, the Commissioner argues that substantial evidence supports the ALJ's RFC finding concerning Claimant's limitations because the ALJ considered, "… the pertinent evidence

and reasonably concluded that through the date last insured, which in this case is June 30, 2020, Plaintiff could perform a limited range of light work; and therefore, was not disabled. Plaintiff has not identified any evidence from the relevant period that the ALJ did not consider." (ECF No. 12 at 1). The Commissioner further asserts, "… the decision [is] supported by substantial evidence because the vocational expert testified that an individual with Plaintiff's vocational characteristics that was limited to four hours of standing and walking could perform over 100,000 jobs in the national economy, which the Sixth Circuit recently concluded is a significant number." *See id.*; *See Norris v. Comm'r of Soc. Sec.*, 139 F.4th 541, 548 (6th Cir. 2025). Therefore, the Commissioner concludes that "… the ALJ's decision was supported by substantial evidence… [and] the Court should affirm the Commissioner's decision." (ECF No. 12 at 1).

Having reviewed the parties' primary arguments, the Court discerns three primary issues that need to be addressed. First, the parties dispute whether State agency medical consultant, Dr. Siddiqui, issued an opinion concerning Plaintiff's DIB claim. The second issue is whether the ALJ appropriately found Dr. Siddiqui's opinion concerning the SSI claim unpersuasive for purposes of the DIB claim. Finally, the parties dispute whether the ALJ formed an accurate and logical bridge as to lack of evidence and resulting RFC determination.

### 1. Substantial evidence supports the ALJ's determination that Dr. Siddiqui did not issue an opinion as to Claimant's RFC for the Bond's DIB Claim.

At the crux of this appeal, Bond challenges the ALJ's consideration of Dr. Siddiqui's medical opinion evidence. (ECF. No. 10 at 11–12). In her determination, the ALJ found, "[r]egarding the claimant's Title II claim, State agency medical consultants Mehr Siddiqui, M.D., and Indira Jasti, M.D., did not provide an opinion of the claimant's residual functional capacity during the insured period, citing insufficient evidence (Exhibit 1A/5; 5A/4)." (ECF No. 8, PageID

#: 83). This Court finds substantial evidence supports the ALJ's determination and does not disturb the ALJ's findings.

On July 20, 2022, State agency reviewing physician, Dr. Mehr Siddiqui, evaluated both Bond's Title XVI and Title II's claims. (ECF No. 8, PageID #: 119–132). Dr. Siddiqui opined in his disability determination explanation that Claimant could occasionally lift and/or carry (including upward pulling) 20 pounds, frequently lift and/or carry (including upward pulling) 10 pounds, stand and/or walk (with normal breaks) for a total of 4 hours, sit (with normal breaks) for a total of about 6 hours in an 8-hour workday, occasionally climb ramps/stairs, never climb ladders/ropes/scaffolds, frequently stoop, frequently kneel, frequently crouch, and frequently crawl. (ECF No. 8, PageID #: 122).

Moreover, Dr. Siddiqui opined that Claimant should avoid ladders, ropes, and scaffolds due to neuropathy, Claimant had a limited field of vision, and "is limited to occasional tasks requiring full visual fields[.]" (ECF No. 8, PageID #: 123). Furthermore, Dr. Siddiqui opined that Claimant must avoid all exposure to hazards and heavy machinery. *Id.* However, Dr. Siddiqui noted under a section titled, "RFC Additional Explanation," "AOD-DLI is IE for T2." (ECF No. 8, PageID #: 123). Commissioner states that, "AOD is short for 'alleged onset date,' DLI is short for 'date last insured', IE is short for 'insufficient evidence,' and T2 means 'Title II (i.e., disability insurance benefits)'" (ECF No. 12 at 12). Claimant asks the Court to disregard the notation as "the document does not otherwise indicate the record was insufficient." (ECF No. 13 at 7). However, Claimant later acknowledges that these abbreviations have the meaning indicated by the Commissioner when noted in Dr. Jasti's assessment. *Id.* Additionally, these abbreviations have been adopted by various courts. *See e.g. Diaz v. Commisioner of Soc. Sec.*, No. 1:24-cv-00704-EPG, 2025 U.S. Dist. LEXIS 153600, at *16 (E.D. Cal. Aug. 7, 2025) ("We

10

have IE to fully adjudicate this T16 claim."); *see also R.C. v. Berryhill*, No. 18-cv-05104-JCS, 2020 U.S. Dist. LEXIS 71952, at *15 (N.D. Cal. Apr. 23, 2020) ( "IE for T2."); *Landry v. O'Malley*, No. 8:23-cv-01238-AJR, 2024 U.S. Dist. LEXIS 7028, at *15 (C.D. Cal. Jan. 12, 2024) ("There are limited records in file DLI in past. . . . There is IE."). On December 13, 2022, State agency reviewing physician, Indira Jasti, M.D. assessed, "[t]here is IE [insufficient evidence] in file in order to fully evaluate clmt's [claimant's] conditions from AOD 1/15/2015 – DLI 6/30/2020." (ECF No.  8, PageID #: 137–38). Thus, Dr. Jasti's finding of insufficient evidence further supports the Commissioner and the ALJ's conclusion that Dr. Siddiqui's opinion did not address the DIB claim.

Claimant contends the ALJ erred by "rel[ying] upon a misreading of the record." (ECF. No. 10 at 12). Essentially, Claimant argues that the ALJ should have adopted Dr. Siddiqui's RFC for the Title 16 claim, despite his notation of insufficient evidence under the section, "RFC Additional Explanation" regarding the Title 2 claim. (ECF No.  8, PageID #: 123). This Circuit has "repeatedly affirm[ed] that the claimant bears the ultimate burden of proving disability." *Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008); *see also Brown v. Comm'r of Soc. Sec.*, No. 5:24-CV-00578-CEF, 2024 U.S. Dist. LEXIS 202681, at *19 (N.D. Ohio Nov. 7, 2024), *report and recommendation adopted by*, *Brown v. Comm'r of SSA*, 2024 U.S. Dist. LEXIS 213564 (N.D. Ohio, Nov. 25, 2024). Here, Claimant did not meet that burden. Claimant provided a limited medical record, which scantly addressed Claimant's impairments prior to his date last insured of June 30, 2020. The ALJ considered the evidence and reasonably determined that Dr. Siddiqui found insufficient evidence to provide an opinion of claimant's residual functional capacity during the insured period. *See* 20 C.F.R. § 404.1516 ("If you do not give us the medical and other evidence that we need and request, we will have to make a decision based on information

11

available in your case."). Accordingly, the ALJ's determination that Dr. Siddiqui did not provide an opinion of the claimant's residual functional capacity during the insured period, citing insufficient evidence is supported by substantial evidence, and should be affirmed.

**2. The ALJ appropriately found Dr. Siddiqui's opinion as to the Title XVI claim unpersuasive as to the relevant period.**

Having found that Dr. Siddiqui did not issue an opinion as to Plaintiff's DIB claim, the Court next considered whether the ALJ properly found Dr. Siddiqui's opinion as to the SSI claim unpersuasive.

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e). For claims filed after March 27, 2017, such as this one, the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c).

"Under Social Security regulations, an ALJ weighing medical opinions must consider two factors: supportability and consistency. The supportability analysis examines 'the extent to which the objective medical evidence and supporting explanations presented by a medical source… support his… medical opinion(s).' The consistency analysis looks at how consistent a medical opinion is with evidence from other sources." *Woodard*, 2023 U.S. Dist. Lexis 159761, at *5 (citations omitted). The Social Security regulations define these factors:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)

or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).

Moreover, "[w]hether a medical source's opinion is supported by the record may necessarily overlap with whether a medical source's opinion is consistent with the record, as the opinion's support will typically come from other evidence in the record." *Guthrie v. Comm'r of Soc. Sec*, 2023 WL 6258259 at * 3 (N.D. Ohio Sept. 26, 2023). *See also Rambo v. Comm'r of Soc. Sec.*, 2024 WL 3813417 at * 7 (N.D. Ohio July 9, 2024), *report and recommendation adopted by* 2024 U.S. Dist. LEXIS 190429, 2024 WL 4532777 (N.D. Ohio Oct. 21, 2024); *Bigford v. Comm'r of Soc. Sec.*, 2024 WL 3083251 at * 3 (W.D. Mich. June 21, 2024) ("The ALJ's specific references to portions of the medical record which undercut Nwankwo, Grubelich, and Abbasi's opinions evidence her consideration of the supportability and consistency factors. This is sufficient, even if the ALJ did not specifically code a particular portion of the record to 'consistency' or 'supportability.'") Thus, even where an ALJ appears to conflate the terms "supportability" and "consistency," courts have found no error where the court is able to follow the ALJ's reasoning and is satisfied that the ALJ properly performed the requisite analysis of these factors. *See, e.g., Potts v. Comm'r of Soc. Sec.*, 2024 WL 4660850 at * 8-9 (N.D. Ohio Nov. 4, 2024), *report and recommendation adopted by* 2025 U.S. Dist. LEXIS 94672, 2025 WL 1427632 (N.D. Ohio May 19, 2025).

Claimant alleges that the ALJ failed to address the supportability factor as she failed to "provide a meaningful analysis of the evidence cited by Dr. Siddiqui and the supportive

explanations provided …" (ECF No. 10 at 17). The Commissioner argues that the ALJ addressed

the supportability factor as she reviewed in detail the evidence that Dr. Siddiqui relied upon to

form his opinion regarding the Claimant's limitations. (ECF No. 12 at 14). This Court agrees with

the Commissioner.

The ALJ found Dr. Siddiqui's Title 16 opinion with respect to Claimant's DIB claim not

persuasive. She reasoned:

> Regarding the claimant's Title 16 claim, Dr. Siddiqui opined that
> the claimant was limited to light work with four hours of standing
> and walking in an eight hour day; no climbing ladders, occasional
> stair climbing, and frequent performance of stooping, kneeling,
> crouching, and crawling; avoid all exposure to heights and hazards;
> and was limited to occasional performance of "tasks requiring full
> visual fields" due to left hemianopsia diagnosed in November 2021
> (Exhibit 1A/2, 4-5). This opinion is not persuasive regarding the
> insured period because it addresses limitations that manifested after
> the date last insured and is not consistent with the objective medical
> evidence of record from the relevant period.

(ECF No. 8, PageID #: 83). Here, Dr. Siddiqui noted that Bond filed for benefits on

February 15, 2022, claiming the following conditions: Cancer, Transient Ischemic Attacks, Toe

issues. (ECF No. 8, PageID #: 126). Dr. Siddiqui also noted in his "Findings of Fact and Analysis

of Evidence" section the medical records he considered, including a December 2021 report from

Ohio Eye Associates; November 2021 records from UH Samaritan Medical; treatment notes

regarding diabetic foot care from the Department of Veteran's Affairs dated April 2015, PCP

treatment notes from the Department of Veteran's Affairs (VA) February 2019, chest x-ray from

September 2020, and January 2021; 2021-2022 records from UH Richland Primary Care; and Dr.

Bauza's June 2022 examination. (ECF No. 8, PageID #: 127–28).

The ALJ found Dr. Siddiqui's opinion and limitations to be not persuasive "regarding the

insured period because it addresses limitations that manifested after the date last insured and is not

consistent with the objective medical evidence of record from the relevant period." (ECF No. 8, PageID #: 83). However, the ALJ fully discussed the medical record just prior to her analysis of Dr. Siddiqui's opinion. (ECF No. 8, PageID #: 80–83). Among other things, the ALJ summarized Bond's health records to the relevant period, including the April 2015 diabetic foot examination, and noted that Plaintiff reported numbness, tingling, and burning sensations in his feet, and a yearlong history of rash between his last two toes. (ECF No. 8, PageID #: 81).

Thus, when reading the decision as whole, the Court finds that the ALJ's overall discussion of Bond's health history and treatment records, largely the records pertaining to the relevant period and those considered by Dr. Siddiqui, is sufficient to adequately articulate her supportability assessment with regard to Dr. Siddiqui's medical opinion for the Title 16 claim.

The ALJ also applied proper legal standards in expressing her evaluation of the consistency of Dr. Siddiqui's opinion. The ALJ determined that Dr. Siddiqui's opinion was not persuasive "… because it addresses limitations that manifested after the date last insured and is not consistent with the objective medical evidence of record from the relevant period." (ECF No. 8, PageID #: 83). Claimant alleges that the ALJ's one sentence explanation failed to explain how Dr. Siddiqui's opinion is inconsistent or unsupported by the entire record. (ECF No. 10 at 16–17). However, the consistency factor requires an ALJ to consider the degree to which a medical opinion is consistent with evidence from other medical and nonmedical sources. 20 C.F.R. § 404.1520c(c)(2) and the Court reviews the ALJ's determination as a whole. *See Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 851–52 (6th Cir. 2020); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457.

The ALJ's determination makes clear that, she considered medical evidence from both before the date last insured of June 30, 2020, and subsequent medical opinions:

> After the date last insured, the claimant was diagnosed with transient ischemic attack (TIA), skin cancer involving the right foot, and

15

> vision impairment (Exhibits 4F-6F, 2021; 7F, 2022). However, evidence from the insured period does not support onset of these impairments before the date last insured. These medical records support some limitation due to diabetes and episodic neck pain, but not to the exclusion of light exertion with minor limits in postural activities and environmental exposures.

(ECF No. 8, PageID #: 80). The ALJ conveys that Dr. Siddiqui's opinion regarding the title 16 claim is inconsistent with the record because the majority of Claimant's treatment records, symptoms, and limitations developed after the date of last insured. Thus, the records relied upon by Dr. Siddiqui, namely chest x-ray from September 2020, and January 2021; the December 2021 report from Ohio Eye Associates; November 2021 records from UH Samaritan Medical; and January 2021; 2021-2022 records from UH Richland Primary Care; and Dr. Bauza's June 2022 examination and do not pertain to the present period at issue. (ECF No. 8, PageID #: 127–28).

In sum, the ALJ provided a logical bridge between her conclusions, the provider's evidence, and evidence in the record that does not pertain to period at issue, in concluding that Siddiqui's opinion is not consistent with evidence of the record. Therefore, the consistency factor as to Dr. Siddiqui's opinion is satisfied.

### 3. The ALJ formed an Accurate and Logical Bridge as to Lack of Evidence and the Resulting RFC, thus her Findings are Supported by Substantial Evidence.

Claimant asserts, "… the ALJ failed to build a logical bridge between the evidence and the RFC finding" and "[t]he ALJ failed to explain how the medical records support a range of light work if the PAMFs and consultative examination are not persuasive." (ECF No. 10 at 20). Claimant then contends that the RFC is "insufficient" due to the ALJ's consideration of the evidence. *Id.* Claimant suggests that this Court reweigh and reconsider the evidence. This expansive scope of review is beyond the purview of this Court and the ALJ's determination will not be disturbed for the reasons discussed below.

Despite Claimant's contentions, it is "the ALJ [who] is charged with the responsibility of determining the RFC based on her evaluation of the medical and non-medical evidence." *Dawnyetta S. v. Comm'r of Soc. Sec.*, No. 2:24-cv-10424, 2025 LX 366129 (E.D. Mich. Mar. 14, 2025); *see also Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010). Additionally, it is the Claimant's burden to prove disability. *See Wilson,* 280 F. App'x at 459. Claimant incorrectly suggests the burden lies with the ALJ to prove disability. Claimant contends that the ALJ's rejection of the PAMFs left the ALJ with insufficient evidence to formulate the RFC. (ECF No. 10 at 20). However, Claimant failed to meet this burden and provided a limited medical record concerning Claimant's impairments prior to his date last insured of June 30, 2020. The ALJ then formulated an RFC based upon substantial evidence found in the record. Thus, the ALJ's determination that the medical record supports light work is supported by substantial evidence.

In determining the adequacy of the ALJ's RFC determination, a reviewing court must focus on the explanation given by the ALJ's decision without finding further support in the records not specifically included in the decision. *See Ripley v. Comm'r of Soc. Sec.*, 415 F. Supp. 3d 752, 764 (N.D. Ohio 2019) ("In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence"). When supported by substantial evidence and reasonably drawn from the record, the Commissioner's factual findings are conclusive – even if this court might reach a different conclusion or if the evidence could have supported a different conclusion. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record."); *Biestek*

*v. Comm'r of Soc. Sec.,* 880 F.3d 778, 783 (6th Cir. 2017) ("It is not our role to try the case *de novo*." (quotation omitted)).

In her determination, the ALJ acknowledged Bond's impairments including, cervical spine disorder and diabetes and agreed that they were severe impairments at Step Two. (ECF No. 8, PageID #: 79). The ALJ included a lengthy summary of the medical evidence (*see infra* 4–7, describing Claimant's Diabetes Impairments, Foot Impairment, and Spine Impairments) and non-medical evidence from before the date last insured of June 30, 2020.

The ALJ then formulated the RFC based upon limited evidence from before the date last insured:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant could: never climb ladders, ropes, or scaffolds; never be exposed to concentrated levels of fumes, odors, dusts, gases, poor ventilation or other pulmonary irritants; and never be exposed to hazards such as moving machinery or unprotected heights.

(ECF No. 8, PageID #: 79–80). In formulating the light work RFC, the ALJ considered Bond's medical records prior to the date last insured. At a diabetic podiatry exam in April 2015, Thomas Schmitt DPM reported, "the claimant's skin was supple and intact in the bilateral feet and ankles, he had normal strength and range of motion in both feet, and his protective sensation was intact in all sites on monofilament testing" and "[t]he 3rd and 4th webspaces on the right foot were macerated and erythematous (softened and red), otherwise, all other spaces were clean and dry and no open lesions were noted." (ECF No. 8, PageID #: 81, 456). In February 2019, at a follow-up for diabetes management, "[t]he claimant reported taking ibuprofen as needed for chronic neck and shoulder pain, but denied upper extremity weakness or radiculopathy (citation omitted). A physical exam revealed steady gait, normal heart and lung sounds, and no edema in the

extremities." (ECF No. 8, PageID #: 81, 508). In February 2014, Dr. Pawar observed Claimant for pain in his neck and scapula yet reported, "no cervical tenderness spasm, left elbow no redness (or) tenderness, no tenderness over (the) left scapula, no tenderness over the clavicle." (ECF No. 8, PageID #: 82, 573).

Moreover, Dr. Pawar also diagnosed Claimant with "chronic osteoarthritis at this time, (citation omitted) but the record contains no x-rays of the claimant's ... neck, shoulders, or elbow from this period." (ECF No. 8, PageID #: 82, 502).  In August 2018, Claimant sought treatment for pain in his neck and shoulder. (ECF No. 8, PageID #: 82, 513). Nurse Practitioner Britt observed, "[t]here is no spine tenderness. There is pain w/forward flexion and extension. Pain w/lateral bending." (ECF No. 8, PageID #: 82, 514). Ms. Britt also reported that the claimant's gait was steady. *Id.* Ms. Britt's reports indicate tenderness in the affected areas but no limits in strength, sensation, or motor functioning in the upper extremity. *Id.* Additionally, the ALJ considered medical evidence after the date last insured including, a September 2020 diabetic foot exam, an April 2021 biopsy of Bond's right foot, June 2022 spine x-ray, June 2022 notes of consultative medical examiner Karolis Bauza, M.D., State agency medical consultants Mehr Siddiqui, M.D., and Indira Jasti, M.D.'s opinions. (ECF No. 8, PageID #: 81–83).

After consideration of the above evidence the ALJ concluded:

> Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the medical evidence of record: In limiting the claimant to light exertion, the undersigned considered the claimant's history of neck pain with tenderness and decreased motion about the cervical spine from 2015-2020, and treatment for diabetes with minor right foot irritation during this period. The undersigned also restricted the claimant's exposure to heights and hazards because the combination of neck pain and diabetes decreases his safety in such environments.

(ECF No. 8, PageID #: 83–84). Therefore, the ALJ considered Claimant's medical evidence from before and after the date last insured, inconsistencies in the record, and formulated these findings into the RFC. Accordingly, this demonstrates that the ALJ reasonably explained how she considered Bond's impairments and how she accommodated these symptoms when she formulated Bond's RFC. Thus, the Court must defer to the ALJ's decision, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.") (citation omitted).

Nevertheless, Bond urges this Court to substitute its judgment for that of the ALJ. Specifically, Bond alleges "errors" that appear to be simply his disagreement with the ALJ's weighing of the evidence, such as Bond's repeated contention that the ALJ's conclusions are "unsupported." (ECF No. 10 at 21–22). Specifically, Claimant takes issue with the ALJ's consideration of the evidence concerning Claimant's diabetes and foot impairments, noting "ALJ found the record lacked 'objective observations of gait limits, weakness, sensation loss, skin lesions, atrophy, or other signs of severe impairment in the claimant's lower extremities.'" (ECF No. 10 at 22). However, it is not the role of this Court "to reconsider the facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). Rather, because substantial evidence supports the Commissioner's decision, the Court must defer to it, "even if there is substantial evidence that would have supported an opposite conclusion." *Wright v.*

20

*Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.") (citations omitted).

Furthermore, Bond argues that the ALJ erred by "… exclud[ing] limitations resulting from impairments diagnosed after the date last insured." (ECF No. 10 at 19). The Sixth Circuit as well as Courts in this District hold, "[e]vidence of disability obtained after the expiration of insured status is generally of little probative value unless it illuminates the claimant's health before the insurance cutoff date." *See Abney v. Astrue*, No. 5:07-394-KKC, 2008 U.S. Dist. LEXIS 39331, at *18 (E.D. Ky. May 13, 2008); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (medical evidence after date last insured was only minimally probative of claimant's condition before date last insured, so did not affect disability determination); *see also Begley v. Mathews*, 544 F.2d 1345, 1354 (6th Cir. 1976) ("Medical evidence of a subsequent condition of health, reasonably proximate to a preceding time may be used to establish the existence of the same condition at the preceding time.") (emphasis added).

Additionally, the post-date last insured evidence, to the extent that it relates back, is relevant only if it is reflective of a claimant's limitations prior to the date last insured, rather than merely his impairments or condition prior to this date. *See* 20 C.F.R. § 416.945(a)(1) ("Your *impairment(s),* and any related symptoms, such as pain, *may cause physical and mental limitations that affect what you can do* in a work setting. Your residual functional capacity is the most you can still do despite your *limitations.*") (emphasis added); *see also* Abney v. Astrue, No. 5:07-394-KKC, 2008 U.S. Dist. LEXIS 39331, at *19 (E.D. Ky. May 13, 2008) ("The mere diagnosis … of course, says nothing about the severity of the condition.").

Although Claimant has submitted medical records dating after June 30, 2020, his date last insured, none of the records tend to relate back to the state of Claimant's physical limitations prior to this date. Claimant relies upon December 2020 treatment notes, detailing neuropathy, numbness and feeling of feet falling asleep, erythematous discoloration noted to the plantar feet, hyperkeratotic tissue in the right 3rd and 4th webspaces, vibratory sensation absent in the hallux IPJ bilaterally, abnormal range of motion in the ankles. And tenderness with palpation to the right 3rd and 4th interspaces. (ECF No. 10 at 18–19). Claimant also relies upon an April 2021 biopsy that indicated squamous cell carcinoma in situ.[2] (ECF No. 10 at 19). Claimant concludes, "[o]ther than now having a diagnosis, Plaintiff's feet were essentially the same as they were in 2015 with clinical findings located within the right toes." (ECF No. 10 at 19).

However, these records undermine Claimant's contentions. As noted above, Claimant's diagnosis of squamous cell carcinoma is not indicative of his level of impairment prior to the date last insured. Moreover, Claimant's 2015 medical records reflect a lesser impairment level than that described in the December 2020 treatment notes. Specifically, at a diabetic podiatry exam in April 2015, Thomas Schmitt DPM reported, "the claimant's skin was supple and intact in the bilateral feet and ankles, he had normal strength and range of motion in both feet, and his protective sensation was intact in all sites on monofilament testing" and "[t]he 3rd and 4th webspaces on the right foot were macerated and erythematous (softened and red), otherwise, all other spaces were clean and dry and no open lesions were noted." (ECF No. 8, PageID #: 81, 456). Thus, the December 2020 treatment notes and April 2021 biopsy are indicative of Claimant's worsening condition after the date last insured. These records do not relate back to Claimant's impairment

---

[2] Squamous cell carcinoma of the skin is a type of cancer that starts as a growth of cells on the skin. *See* Mayo Clinic Staff, *Squamous Cell Carcinoma: Diagnosis & Treatment*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/squamous-cell-carcinoma/diagnosis-treatment/drc-20352486 (last visited Dec. 9, 2025).

during the period prior. *See Berry v. Astrue*, No. 1:10-cv-435, 2011 U.S. Dist. LEXIS 126351, 2011 WL 5239222, at *5 (S.D. Ohio August 10, 2011) (evidence of worsening back condition in the months after the date last insured properly excluded by ALJ because there was no evidence that back pain resulted in disabling pain before date last insured); *see also Foutty v. Comm'r of Soc. Sec.*, No. 2:18-cv-00285, 2019 U.S. Dist. LEXIS 140941, at *56 (S.D. Ohio Aug. 20, 2019) (holding that worsening mental health condition evidenced after the date last insured does not relate back to relevant period). Thus, the December 2020 and April 2021 treatment records do not relate back to the date last insured.

Therefore, there is substantial evidence for the ALJ's conclusion that Claimant was capable of a limited range of light level work. Claimant failed to present sufficient contemporaneous medical evidence of disability from the relevant time period. Thus, the ALJ did not err by excluding limitations in the RFC for Claimant's impairments after the date last insured.

## VI. Recommendation

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Bond's Statement of Errors and AFFIRM the Commissioner's decision.


Dated: January 5, 2026

*s/ Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).